IN THE CIRCUIT COURT OF TENNESSEE
FOR THE TWELFTH JUDICIAL DISTRICT AT
WINCHESTER, FRANKLIN COUNTY, TENNESSEE

| | |
|---|---|
| FREEMAN M. FROTHINGHAM, JR., AS EXECUTOR OF THE ESTATE OF AND FOR USE AND BENEFIT OF THE STATUTORY BENEFICIARIES OF FREEMAN M. FROTHINGHAM, SR., DECEASED,<br><br>PLAINTIFF,<br><br>vs.<br><br>GGNSC WINCHESTER, LLC d/b/a Golden LivingCenter – Mountain View; GPH WINCHESTER, LLC; GGNSC EQUITY HOLDINGS, LLC; GGNSC CLINCAL SERVICES, LLC; GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC ADMINISTRATIVE SERVICES, LLC; GOLDEN GATE ANCILLARY, LLC; GGNSC HOLDINGS, LLC; and 360 HEALTHCARE STAFFING, LLC<br><br>DEFENDANTS. | **AMENDED COMPLAINT FOR DAMAGES**<br><br>CAUSE NO: 4:12-cv-00035<br>JURY DEMANDED |

Plaintiff, complaining of Defendants, alleges and says:

## I. INTRODUCTION & DEFINITIONS

1.       All allegations in this Complaint are based upon information and belief except for those allegations which pertain to the Plaintiff, the persons, and estate the Plaintiff represents, and Plaintiff's counsel.   Plaintiff's information and belief are based upon, *inter alia*, the investigation conducted to date by Plaintiff and his counsel.   Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

1

2.      The acts and omissions of Defendants as set out below are violations of the Tennessee Nursing Home Residents' Rights Act (Tenn. Code Ann. § 68-11-101, *et seq.*) and its implementing regulations (Nursing Home Rules and Regulations § 1200-8-6, *et seq.)*, as well as the Tennessee Adult Protection Act (Tenn. Code Ann. § 71-6-101, *et seq.*).

3.      Plaintiff contends that the violation of the statutes and regulations set out in the paragraphs below give rise to a separate cause of action.  Moreover, the violation of such statutes and regulations are evidence of negligence and/or medical negligence.

4.      When the terms "Defendants" or "Corporate Defendants" are used in this action, such term refers to and includes each named Defendant in this lawsuit.

5.      When the term "facility" is used in this action, such terms refer to and mean Golden LivingCenter – Mountain View located at 1360 Bypass Road, Winchester, Franklin County, Tennessee 37398.

6.      When it is alleged in this action that Defendants or Corporate Defendants did any act or thing or failed to do any act or thing, it means that the officers, agents, or employees of the designated corporation(s) and/or business entity(ies) respectively performed, participated in, or failed to perform such acts or things while in the course and scope of their employment or agency relationships with Defendants or Corporate Defendants.

## II. PLAINTIFF

7.      At all times relevant to this cause of action, Freeman M. Frothingham, Sr., upon information and belief, as well as by a reading of the Facility's nursing home records, was an incompetent adult (both physical and mental) resident of Winchester, Franklin County, Tennessee.

8.     As such, Plaintiff affirmatively pleads that any statute of limitations would be tolled until Freeman M. Frothingham, Sr. passed away on or about February 4, 2011; further Defendants are estopped from denying such tolling by virtue of its own records.

9.     At all times relevant to this cause of action, Freeman M. Frothingham, Jr. was, upon information and belief, an adult resident citizen of Morrison, Warren County, Tennessee. Freeman M. Frothingham, Jr. is the son of Freeman M. Frothingham, Sr..

10.     Freeman M. Frothingham, Jr. brings this action as the Executor of the Estate of and for the Use and Benefit of Freeman M. Frothingham, Sr.'s statutory beneficiaries.

### III. DEFENDANTS

11.     On information and belief, Defendant GGNSC Winchester, LLC ("GGNSC Winchester") is and was at all times relevant hereto engaged in the operation, management, ownership and/or control of Golden LivingCenter – Mountain View located in Franklin County, Tennessee with its principal place of business located at 1360 Bypass Road, Winchester, Tennessee 37398. Defendant GGNSC Winchester was also the licensee of the Facility during all times relevant to this Complaint. Defendant GGNSC Winchester's business of owning, operating, managing and maintaining the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set forth in this Complaint for Damages. Defendant GGNSC Winchester may be served with legal process through its registered agent for service of process, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

12.     On information and belief, Defendant GPH Winchester, LLC ("GPH Winchester") is and was at all times relevant hereto engaged in the operation, leasing, management, ownership and/or control of Golden LivingCenter – Mountain View located in Franklin County, Tennessee with its principal place of business located at 1000 Fianna Way, Fort

Smith, Arkansas 72919. Defendant GPH Winchester was also the owner of the real estate where the Facility was located during all times relevant to this Complaint. Defendant GPH Winchester's business of owning, leasing, operating, managing and maintaining nursing homes, healthcare, and long-term care facilities, including the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set forth in this Complaint for Damages. Defendant GPH Winchester may be served with legal process through its registered agent for service of process, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

13. On information and belief, Defendant GGNSC Equity Holdings, LLC ("GGNSC Equity") is and was at all times relevant hereto engaged in the operation, leasing, management, ownership and/or control of Golden LivingCenter – Winchester located in Franklin County, Tennessee with its principal place of business located at 1000 Fianna Way, Ft. Smith, Arkansas 72919. Defendant GGNSC Equity was also the Master Tenant of the real estate where the Facility is located during all times relevant to this Complaint. Defendant Equity's business of owning, leasing, operating, managing and maintaining nursing homes, healthcare, and long-term care facilities, including the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set forth in this Complaint for Damages. Defendant GGNSC Equity may be served with legal process through its registered agent for service of process, Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201. Defendant GGNSC Equity is also the Limited Liability Company Member of Co-Defendant GGNSC Winchester.

14.     On information and belief, Defendant GGNSC Clinical Services, LLC ("GGNSC Clinical") is and was at all times relevant hereto engaged in the operation, oversight, management, ownership and/or control of Golden LivingCenter – Winchester located in Franklin County, Tennessee with its principal place of business located at 1000 Fianna Way, Ft. Smith, Arkansas 72919.     Defendant GGNSC Clinical also provided certain clinical and other professional services to the Facility pursuant to a written contract during all times relevant to this Complaint.  Defendant GGNSC Clinical's business of owning, overseeing, operating, managing and maintaining nursing homes, healthcare, and long-term care facilities, including the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set forth in this Complaint for Damages.  Defendant GGNSC Clinical may be served with legal process through its registered agent for service of process, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

15.     On information and belief, Defendant Golden Gate National Senior Care, LLC ("Golden Gate") is and was at all times relevant hereto engaged in the operation, oversight, management, ownership and/or control of Golden LivingCenter – Winchester located in Franklin County, Tennessee with its principal place of business located at 1000 Fianna Way, Ft. Smith, Arkansas 72919.  Defendant Golden Gate also hired the Facility's Executive Director(s), as well as controlled or had the right to control the financial decisions of the Facility during all times relevant to this Complaint.  Defendant Golden Gate's business of owning, overseeing, operating, managing and maintaining nursing homes, healthcare, and long-term care facilities, including the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set forth in this Complaint for Damages.  Defendant Golden Gate may be served with legal process through its registered agent for service of process, Corporation Service Company, 2908 Poston

Avenue, Nashville, Tennessee 37203-1312. Defendant Golden Gate is also the Limited Liability Company Member of Co-Defendants GGNSC Equity and GGNSC Clinical.

16.     On information and belief, Defendant GGNSC Administrative Services, LLC ("GGNSC Administrative") is and was at all times relevant hereto engaged in the operation, oversight, management, ownership and/or control of Golden LivingCenter – Winchester located in Franklin County, Tennessee with its principal place of business located at 1000 Fianna Way, Ft. Smith, Arkansas 72919.  Defendant GGNSC Administrative also provided certain business and other professional services to the Facility pursuant to a written contract during all times relevant to this Complaint.  Defendant GGNSC Administrative's business of owning, overseeing, operating, managing and maintaining nursing homes, healthcare, and long-term care facilities, including the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set forth in this Complaint for Damages.  Defendant GGNSC Administrative may be served with legal process through its registered agent for service of process, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

17.     On information and belief, Defendant Golden Gate Ancillary, LLC ("Golden Gate Ancillary") is and was at all times relevant hereto engaged in the operation, servicing, management, ownership and/or control of Golden LivingCenter – Winchester located in Franklin County, Tennessee with its principal place of business located at 1000 Fianna Way, Ft. Smith, Arkansas 72919.  Defendant Golden Gate Ancillary's business of owning, servicing, operating, managing and maintaining nursing homes, healthcare, and long-term care facilities, including the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set forth in this Complaint for Damages.  Defendant Golden Gate Ancillary may be served with legal process through its registered agent for service of process, Corporation Service Company,

2908 Poston Avenue, Nashville, Tennessee 37203-1312. Defendant Golden Gate Ancillary is also the Limited Liability Company Member of Co-Defendant 360 Healthcare Staffing, LLC ("360 Healthcare").

18.     On information and belief, Defendant GGNSC Holdings, LLC ("GGNSC Holdings") is and was at all times relevant hereto engaged in the operation, management, ownership and/or control of Golden LivingCenter – Winchester located in Franklin County, Tennessee with its principal place of business located at 1000 Fianna Way, Ft. Smith, Arkansas 72919.  Defendant GGNSC Holdings' business of owning, operating, managing and maintaining nursing homes, healthcare, and long-term care facilities, including the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set forth in this Complaint for Damages.  Defendant GGNSC Holdings may be served with legal process through its registered agent for service of process, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312. Defendant GGNSC Holdings is also the Limited Liability Company Member of Co-Defendants Golden Gate, GGNSC Administrative, and GGNSC Golden Gate Ancillary.

19.     On information and belief, Defendant 360 Healthcare is and was at all times relevant hereto engaged in the operation, staffing, management, ownership and/or control of Golden LivingCenter – Winchester located in Franklin County, Tennessee with its principal place of business located at 1000 Fianna Way, Ft. Smith, Arkansas 72919.  Defendant 360 Healthcare also provided employees, agents and/or staff to the Facility during all times relevant to this Complaint.   Defendant 360 Healthcare's business of owning, staffing, operating, managing and maintaining nursing homes, healthcare, and long-term care facilities, including the Facility, during all times material to this lawsuit, serves as the basis for the causes of action set

forth in this Complaint for Damages. Defendant 360 Healthcare may be served with legal process through its registered agent for service of process, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

20.     One man, Ronald E. Silva, is the *de facto* manager and owner of the Corporate Defendants and controlled or had the right to control the financial operations of these entities through his hedge fund, Fillmore Capital Partners, LLC, and as such his decisions individually and through his control over the Corporate Defendants impacted the care at the Facility and caused injury to Freeman M. Frothingham, Sr.

## IV.  VENUE & JURISDICTION

21.     The Corporate Defendants' contacts with the State of Tennessee form the basis of personal jurisdiction in this case.

22.     The injuries forming the basis of this lawsuit were a product of the clinical, corporate and/or financial policies designed, formulated, and implemented by the Corporate Defendants.

23.     All injuries, acts, omissions and events which form the basis of this Complaint occurred or had their end result in Winchester, Franklin County, Tennessee.

24.     Venue is proper pursuant to Tenn. Code Ann. § 20-4-101, because the action was brought in Franklin County, Tennessee where the cause of action arose.

## V.  NOTICE

25.     Plaintiff affirmatively pleads that the Tennessee's Medical Malpractice Act's notice and other requirements as set forth in TENN. CODE. ANN. § 29-26-121 are unconstitutional.

26.     Alternatively, the only Defendant that the notice and other requirements as set forth in TENN. CODE. ANN. § 29-26-121 apply to in this matter is GGNSC Winchester, and the

only claim that such provisions apply to is matter is the claim for medical malpractice set forth in this Complaint for Damages.

27.     The Affidavit of Jennaca Smith is attached as Exhibit A to this Complaint for Damages pursuant to TENN. CODE. ANN. § 29-26-121(a)(3)(B)(4).

28.     Plaintiff affirmatively pleads that the Tennessee Medical Malpractice Act's expert consultation and other requirements as set forth in TENN. CODE. ANN. § 29-26-122(a) are unconstitutional.

29.     Alternatively, the only Defendant that the expert consultation and other requirements as set forth in TENN. CODE. ANN. § 29-26-122(a) apply to in this matter is GGNSC Winchester, and the only claim that such provisions apply to is the matter is the claim for medical malpractice set forth in this Complaint for Damages.

30.     A Certificate of Good Faith is attached as this Complaint for Damages as Exhibit J pursuant to TENN. CODE. ANN. § 29-26-122(a).

## VI.  FACTUAL ALLEGATIONS

### A.  Facts About Joint Venture/Enterprise/Corporate Control (Based Upon Information and Belief)

31.     Corporate Defendants were engaged in a joint venture/enterprise with one other and other unknown, corporately interrelated entities or persons during Freeman M. Frothingham, Sr.'s residency.  Defendants shared an interest in the object and purpose of the undertaking for which the Facility was operated.  Plaintiff does not yet, and has no reason to know, of the identify of the other corporate entities or persons that Defendants were involved with during all times material to Freeman M. Frothingham, Sr.'s residency because such entities or persons have been, upon information and belief, fraudulently, wrongfully and/or improperly concealed from the public, including Freeman M. Frothingham, Sr.'s and his wrongful death beneficiaries.

9

32.     Corporate Defendants operated a joint venture/enterprise with each other and these yet unknown entities or persons in an effort to streamline and advance their business interests and collectively control the Facility.

33.     Corporate Defendants operated collectively as a single business enterprise with each other and these other unidentified entities or persons, carrying out a common business objective and is jointly and severally liable for damages with these other unidentified entities or persons to Plaintiff for injuries caused to Freeman M. Frothingham, Sr.

34.     Corporate Defendants controlled the **operation**, **planning**, **management** and **quality control** of the Facility with each other, or had the capacity to control such activities, along with these unknown entities or persons.

35.     The fiscal, financial and budgetary decisions, oversight, and policies handed down by the Corporate Defendants over the Facility included, but was not limited to the following: *(1) control of marketing; (2) control of human resources department; (3) control of management; (4) management of personnel employed by the facility (5) control of training; (6) control of staffing; (7) creation of policies and procedures including manuals; (8) implementing and carrying out policy and procedures handed down to the facility; (9) control of recruitment and retention; (10) control of rates of pay or compensation; (11) control of federal and state Medicare and Medicaid reimbursement; (12) control of quality care assessment and compliance; (13) control over licensure and certification; (14) control of legal services; (15) control of financial, tax, and accounting policies.*

10

36.     The acts, control and authority alleged in the preceding paragraph were driven by the Corporate Defendants' ownership, operation, and control, either directly or through the agency of each other and/or other diverse subordinates, agents, subsidiaries, servants, or employees of the Facility.

37.     The Corporate Defendants controlled the management and decision-making concerning the operation of the Facility and exercised control over, or had the capacity to do so, previously authorized and/or subsequently ratified the daily work of the *custodial* and *skilled* employees at the Facility.

38.     The Corporate Defendants exercised the control alleged, or had the right to control as alleged, in the preceding paragraphs through the following practices:

  a.  By providing an Administrator;

  b.  By providing other management and supervisory personnel;

  c.  By developing and/or providing policies and procedures which governed the staff's performance and delivery of both *custodial, non-medical* and *skilled/medical* care to the residents in the facility, including decisions on which residents to admit and/or transfer;

  d.  By developing and/or providing policies and procedures which determine which residents should be admitted, including those like Freeman M. Frothingham, Sr. who had an existing medical conditions that required constant attention and monitoring;

  e.  By providing training to the staff and determining the skill level mix of direct care staff for each shift;

  f.  By influencing and/or controlling management and budgetary decisions which directly affected the care, both *custodial, direct non-medical care as well as medical skilled nursing care*, of the residents at the facility;

  g.  By establishing the guidelines and admission criteria for residents and policies for removing or transferring residents after admission; and

  h.  By intentionally or recklessly failing to purchase comprehensive general liability coverage policy sufficient to satisfy claims like those of Freeman M. Frothingham, Sr.'s.

39.    The Corporate Defendants' actions and inactions resulted in residents at the Facility at issue, including Freeman M. Frothingham, Sr., from receiving adequate care.

40.    The Corporate Defendants were *de facto* partners with each other and with these unidentified entities and persons and thus liable for their actions by virtue of carrying on a venture for their common benefit, with each party contributing property or services to the venture, and each party with a community of interests in the *profits* of the venture.

41.    The actions of the Corporate Defendants and each of its servants, agents, employees and subordinates, as set forth herein, are imputed to each Corporate Defendant, jointly and severally.

42.    At all times relevant to this cause of action, the Corporate Defendants' employees and/or agents were acting within the course and scope of their employment.

43.    The Corporate Defendants deviated from the duty of reasonable care owed to residents such as Freeman M. Frothingham, Sr. in the following ways:

a.    Failing to provide Freeman M. Frothingham, Sr. with a safe environment;

b.    Failing to provide food and water;

c.    Failing to properly train and supervise facility employees and staff;

d.    Failing to properly staff the facility with sufficient numbers of professional and non-professional staff to protect Freeman M. Frothingham, Sr. from injury and neglect;

e.    Failing to recognize the dangers associated with residents such as Freeman M. Frothingham, Sr.;

f.    Failing to properly supervise and care for Freeman M. Frothingham, Sr.;

g.    Failing to properly budget the facility to provide adequate staffing and supplies;

h.    Failure of corporate and management agents to properly staff, hire, budget and train the facility's employees to ensure that Freeman M. Frothingham, Sr. was provided the appropriate level of care and supervision that he required; and

i.      Such other acts or omissions that may be proven through discovery or at trial.

**B. Facts about the Resident, Freeman M. Frothingham, Sr.**

44.     Some of the facts giving rise to the claims alleged in this Complaint include, but are not limited to, the failure, during late 2010-early 2011, of the Corporate Defendants to provide adequate and appropriate: assessments, reassessments, care planning, food, water, prevention of fecal impaction, supervision, documentation, hygiene, assistance with activities of daily living, turning and repositioning, prevention of pressure sores, infection, pain assessments, access to necessary health care, and custodial care.  Additional injuries include, but are not limited to several large, foul smelling and infected pressure ulcers, as well as fecal impaction and death.

**C. Facts relative to Ordinary Negligence & TAPA**

45.     Freeman M. Frothingham, Sr. required assistance with his activities of daily living including the most *basic* activities such as turning, movement, eating, drinking, ambulating, grooming, and going to the bathroom.

46.     Defendants were aware of Freeman M. Frothingham, Sr.'s condition and his need for assistance with *basic, non-medical, custodial* activities of daily living, or reasonably should have been aware and had a duty to meet Freeman M. Frothingham, Sr.'s needs or else discharge him to an appropriate facility that could meet his needs.

47.     Defendants failed to consistently provide sufficient numbers of adequately trained and skilled nursing and custodial personnel, and as a result the specific *custodial* needs of Freeman M. Frothingham, Sr. could not be met, which accelerated the deterioration of his *health* and *physical condition* beyond that caused by the normal aging process.

48.     Defendants failed to exercise reasonable care in meeting Freeman M. Frothingham, Sr.'s most *basic, non-medical, custodial* needs causing injury to him.

49.     Defendants failed to adequately assist Freeman M. Frothingham, Sr. when needed, resulting in multiple pressure sores and a fecal impaction.

50.     Defendants failed to adequately move Freeman M. Frothingham, Sr.'s limbs, resulting in painful pressure sores.

51.     The Facility failed to keep the body of Freeman M. Frothingham, Sr. clean and dry and free of urine and feces, causing great lost of dignity and respect and very poor hygiene and other injuries.

52.     The Facility failed to provide adequate food within Freeman M. Frothingham, Sr.'s meal plan and failed to make it available to him and assist him in eating it when needed.

53.     The Facility failed to provide adequate water and make it available for Freeman M. Frothingham, Sr. to drink and assist him in drinking when needed.

54.     Plaintiff alleges malnourishment and dehydration as a fact relative to ordinary negligence because the assistance that Freeman M. Frothingham, Sr. needed in this regard was assisting in *holding* a glass of water so that he could drink and assistance in getting food from his plate into his mouth, none of which constitutes medical care but is *basic* care.

55.     Staffing problems and difficulties at the Facility, as well as resultant resident neglect was reported up the chain of command from the most direct hands-on caregivers.

56.     Corporate Defendants controlled the budget and the operation of the Facility recklessly disregarded warnings so as to put priority of themselves and their own profits before residents and their care including as Freeman M. Frothingham, Sr.

57.    Corporate Defendants' decisions to prioritize profit over residents at the Facility directly caused humiliating injuries and death to Freeman M. Frothingham, Sr.

58.    As a direct and proximate result of the failure to meet his most *basic custodial* needs, Freeman M. Frothingham, Sr. suffered from multiple humiliating *dignity* violations including but not limited to poor *hygiene*, malnourishment, dehydration, pressure sores, fecal impaction, abuse and neglect, and death.

**D.  Facts relative to Medical Negligence**

59.    The Facility was chronically without a sufficient number of skilled nursing staff to meet the *nursing* and *medical* needs of residents including Freeman M. Frothingham, Sr.

60.    Without sufficient numbers of adequately trained skilled nursing personnel, the specific *nursing* and *medical* needs of Freeman M. Frothingham, Sr. could not be met, which accelerated the deterioration of his *health* and *physical condition* beyond that caused by the normal aging process.

61.    Defendants did not meet the skilled *nursing* and *medical* needs of Freeman M. Frothingham, Sr. within the standard of care for a nursing home in the medical community or similar medical community where the facility at issue is located.

62.    As a direct and proximate result of the failure to meet the n*ursing* and *medical* needs of Freeman M. Frothingham, Sr. he became malnourished and dehydrated, developed infections and pressure sores, and resulted in pain, suffering, permanent impairment, and death.

63.    The staffing difficulties and problems in the Facility and the failure to provide *skilled nursing* care related to the *medical* treatment were reported and communicated up the chain of command.

64.     Defendants' control over the budget and the operation of the Facility recklessly disregarded warnings so as to prioritize their own desire for profits ahead of the needs of Freeman M. Frothingham, Sr. and other residents like him from receiving quality skilled *nursing* or *medical* care.

65.     Corporate Defendants' decisions to prioritize profit over residents at the Facility directly caused skilled nursing and medical injury and death to Freeman M. Frothingham, Sr.

## VII.  CAUSES OF ACTION

### A.     *Count One:  Ordinary Negligence*

66.     Plaintiff incorporates the preceding paragraphs (excluding those relative to medical negligence), as if fully set out in this claim for ordinary negligence.

67.     Defendants owed a duty of reasonable care to residents such as Freeman M. Frothingham, Sr. to provide *custodial* care and services and supervision and oversight within accepted standards of care of facilities like the one at issue.

68.     Defendants owed a duty to their residents, including Freeman M. Frothingham, Sr., to hire, train, educate, oversee and supervise employees to deliver *custodial* care and services to residents in a safe, beneficial and dignified manner, as well as to consistently provide sufficient numbers of staff to meet Freeman M. Frothingham, Sr.'s needs.

69.     Defendants breached their duty owed to their residents, including Freeman M. Frothingham, Sr., and were negligent in their *custodial* care and treatment of Freeman M. Frothingham, Sr. through their acts or omissions relevant to *custodial* care.

70.     Defendants were ordinarily negligent in their *custodial* care and treatment of Freeman M. Frothingham, Sr. through their acts or omissions, which include, but are not limited to the following:

a. Failure to provide Freeman M. Frothingham, Sr. with basic and necessary *custodial non-medical* care and services;

b. Failure to take reasonable steps to prevent, eliminate, and correct *custodial* deficiencies and problems;

c. Failure to protect Freeman M. Frothingham, Sr. from abuse and neglect;

d. Failure to keep Freeman M. Frothingham, Sr. clean, comfortable and well-groomed;

e. Failure to treat Freeman M. Frothingham, Sr. with kindness, dignity and respect;

f. Failure to provide consistently provide sufficient numbers of staff; and

g. Failure to adequately assess, evaluate, and supervise non-nursing direct hands on care personnel so as to ensure that Freeman M. Frothingham, Sr. received appropriate *custodial* care in accordance with Defendant' policies and procedures that they created and implemented and advertised.

71.     The injuries Freeman M. Frothingham, Sr. suffered were a proximate result of the acts or omissions carried out by Defendant, singularly and in combination with each other.

**B. Count Two: TAPA**

72.     Plaintiff incorporates the preceding paragraphs (excluding those relative to medical negligence), as if fully set out in these claims for Plaintiff's private action for relief for Defendants' violations of the Tennessee Adult Protection Act ("TAPA"). Tenn. Code Ann. § 71-6-101 *et. seq.*

73.     At all times during Freeman M. Frothingham, Sr.'s residency at Defendants' Facility, he was an "elderly person" and/or a "disabled person" as defined by TAPA. Tenn. Code Ann. § 71-6-120.

74.     During Freeman M. Frothingham, Sr.'s residency at the Facility, Defendants inflicted physical pain, injury, mental anguish on him or deprived him of the services by a caretaker that was necessary to maintain the health and welfare of an adult, resulting in abuse,

neglect or exploitation to Freeman M. Frothingham, Sr. as defined in Tenn. Code Ann. § 71-6-102(1) and Tenn. Code Ann. § 71-6-102(8).

75.     The acts or omissions of the Defendants as set forth herein occurred in the Facility or were committed by staff of a Facility licensed or required to be licensed by the board licensing health care facilities under T.C.A. Chapters 68 and 33.

76.     Defendants were a "caretaker" of Freeman M. Frothingham, Sr. because they assumed the responsibility to care for him voluntarily, by contract, or agreement within the meaning of TAPA. Tenn. Code Ann. § 71-6-102(5)(A).

77.     The acts or omissions of Defendants as set forth herein constitute "abuse or neglect" as defined by TAPA.

78.     Freeman M. Frothingham, Sr.'s injuries were proximately caused by acts or omissions of custodial services that were necessary to maintain the health and welfare of Freeman M. Frothingham, Sr.

79.     Abuse, neglect or exploitation of any adult within the meaning of TAPA is prohibited. Tenn. Code Ann. § 71-6-117 – § 71-6-119.

80.     As an elderly person, Freeman M. Frothingham, Sr. was a member of the class that TAPA is intended to protect.

81.     The injuries suffered by Freeman M. Frothingham, Sr. are of the type that TAPA was designed to prevent.

82.     As a direct and proximate result of the acts and omissions of the Defendants as set forth above, Freeman M. Frothingham, Sr. suffered mental anguish, extreme physical pain, disfigurement, physical suffering, and physical injuries which include but are not limited to those described herein, all of which were a result of custodial neglect.

83.     Violations of TAPA were the proximate cause of Freeman M. Frothingham, Sr.'s injuries for which Plaintiff should be compensated.

### C. Count Three: Medical Negligence

84.     Plaintiff incorporates the preceding paragraphs (except for ordinary negligence and TAPA) as if fully set out in this claims for medical malpractice.

85.     Plaintiff brings this medical malpractice claim pursuant to the Tennessee Medical Malpractice Act codified at Tenn. Code Ann. § 29-26-115 *et seq.*

86.     Defendant owed a duty to residents such as Freeman M. Frothingham, Sr. to provide *skilled nursing* care, treatment, services, and supervision within the recognized standards of acceptable professional practice applicable to them in Franklin County, Tennessee or similar communities.

87.     Defendants owed a duty to their residents, including Freeman M. Frothingham, Sr., to render *skilled nursing* care and services as a reasonably prudent and similarly situated nursing home would rending, including, but not limited to providing care and services in a safe and beneficial way.

88.     Defendants owed a duty to assist all of their residents, including Freeman M. Frothingham, Sr., in attaining and maintaining the highest level of *physical, mental* and psychosocial well-being.

89.     Defendants failed to meet the standard of care and violated their duty of care to Freeman M. Frothingham, Sr. through mistreatment, abuse, neglect and deviations from the applicable standard of care.

90.     Reasonably prudent nursing homes, operating under the same or similar conditions, would not have failed to provide this care.

91. Each of the foregoing acts of *medical* negligence by Defendants were a proximate cause of Freeman M. Frothingham, Sr.'s injuries, all of which were foreseeable to Defendants.

92. Defendants' conduct breaching the duties they owed to Freeman M. Frothingham, Sr. were *negligent, grossly negligent, willful, wanton, malicious, reckless* and/or *intentional.*

93. The injuries suffered by Freeman M. Frothingham, Sr. were a direct and proximate result of the acts or omissions of Defendants, set forth above, singularly or in combination with each other.

**D. Count Four:  Negligence Per Se**

94. Plaintiff incorporates the preceding paragraphs, as if fully set out in these claims for negligence *per se.*

95. Defendants were at all times material to this action operating and controlling a licensed nursing facility subject to rules, statutes and regulations promulgated by the State of Tennessee and the government of the United States.

96. Such rules, statutes and regulations, including but not limited to, Tenn. Code Ann. §68-1-901, *et seq.* set forth the minimum standards and requirements of care for residents with conditions similar to that of Freeman M. Frothingham, Sr.

97. Such rules, statutes and regulations provide for the treatment and establishment of minimum standards of care for the purpose of preventing danger, harm and injury to individuals like Freeman M. Frothingham, Sr..

98. Freeman M. Frothingham, Sr. was in the class of persons intended to be protected by these statutes, rules and regulations which entitled her to adopt as the minimum standards of care for measuring Defendants' conduct and allows him to assert a claim of negligence *per se*

and assert that as a matter of law the conduct of the Defendants amounted to negligence, which proximately caused the severe injury of Freeman M. Frothingham, Sr.

## VIII. DAMAGES

99.     Plaintiff incorporates the preceding paragraphs as if fully set out in these claims for Damages.

100.     Plaintiff asserts the above claims on behalf of himself and on behalf of the wrongful death beneficiaries of Freeman M. Frothingham, Sr. pursuant to Tenn. Code Ann.

101.     Plaintiff seeks compensatory and punitive damages against Defendants in an amount to be determined by the jury, plus costs and other relief to which Plaintiff is entitled.

102.     As a direct and proximate result of the negligence, recklessness, and acts or omissions of the Defendants and/or their employees and/or agents, Freeman M. Frothingham, Sr. was caused to suffer significant harms, losses, pain, suffering, physical injury and damages, including but not limited to those listed in this **Amended Complaint for Damages**.

103.     The longevity, scope and severity of Defendants' failures and actions along with their conscious indifferent actions with regard to the welfare and safety of helpless residents such as Freeman M. Frothingham, Sr. constitute *gross negligence, willful, wanton, reckless, malicious* and/or *intentional misconduct, malice* as such terms are understood in the law.

104.     Such conduct was undertaken by Defendants without regard to the health and safety consequences of residents such as Freeman M. Frothingham, Sr. that were entrusted to Defendant's care and for pecuniary gain.

105.    Such conduct by Defendants evidence such little regard for their duties of care, good faith and fidelity owed to residents including Freeman M. Frothingham, Sr. as to raise a reasonable belief that the acts and omissions were the result of conscious indifference to Freeman M. Frothingham, Sr.'s rights and welfare.

106.    Plaintiff is entitled to compensatory damages and costs, including reasonable expenses, where it is proven Defendants are liable for abuse or neglect as defined in TAPA and reasonable attorneys fees because clear and convincing evidence will establish the abuse and neglect to Freeman M. Frothingham, Sr. resulted from intentional, fraudulent or malicious conduct by Defendant.  Tenn. Code Ann. § 71-6-120.

107.    As a direct and proximate result of the negligence, recklessness, and acts or omissions of the Defendants and/or their employees and/or agents, Freeman M. Frothingham, Sr. was caused to suffer significant harms, losses, pain, suffering, physical injury and damages, including but not limited to those listed in this Amended Complaint.

108.    As a direct and proximate result of the negligence, recklessness, and acts or omissions of the Defendants and/or their employees and/or agents, Freeman M. Frothingham, Sr.'s wrongful death beneficiaries were caused to suffer harms, losses, injuries and damages, including but not limited to the loss of guidance, comfort, advice and any other item of injury or damage as provided for by the Tennessee Wrongful Death Act or otherwise under Tennessee law.

## IX.  JURY DEMAND

109.    Pursuant to Rule 38.02 of the Tennessee Rules of Civil Procedure and the Tennessee Constitution, Plaintiff demands a jury to try all issues so triable.

## X. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, that this action be set down for trial by jury, and that Plaintiff recover a judgment against Defendants for damages in such amount as the jury determines fair and reasonable together with prejudgment and post judgment interest, costs of suit, attorneys' fees, and such other relief to which Plaintiff shows herself entitled and specifically requests the following:

110.    That proper process and service be issued as provided by law;

111.    That a judgment in favor of Plaintiff for compensatory damages against Defendants in the amount of Seven Hundred and Fifty Thousand Dollars and No/100 (750,000.00) or at a greater amount to be determined by a jury against Defendants;

112.    That a judgment in favor of Plaintiff for punitive damages against Defendants in the amount of Seven Hundred and Fifty Thousand Dollars and No/100 (750,000.00) or at a greater amount to be determined by a jury sufficient to punish Defendants for its egregious conduct and to deter Defendants and others from repeating such atrocious conduct;

113.    That Plaintiff receive all general and special damages caused by the alleged conduct of Defendants;

114.    That Plaintiff be awarded his attorneys' fees and costs of litigating this case, including attorneys' fees as specifically provided for in Tenn. Code Ann. § 71-6-101, *et seq.*;

115.    That Plaintiff be awarded any discretionary costs in this cause; and,

116.    That Plaintiff be awarded any and all other relief that the Court deems appropriate.

Dated September 10, 2012.

Respectfully Submitted,

/s/ Joe Dughman_____
Joe Dughman, Esq. (TNBPR 3550)
Joe Dughman & Associates
1812 Broadway
Nashville, Tn. 37203
615.244.3331 (t)
615.515.3512 (f)
joe@joedughman.com

Garry J. Rhoden, Esq. (TNBPR 24815)
The Rhoden Firm
Attorney for Plaintiff
Washington Square
1922 Exeter Road, Suite 12
Germantown, Tennessee 38138
901.827.9162 (t)
901.202.9321 (f)
garry@rhodenfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served by the Court's electronic filing system on:

Heidi R. Hoffecker, Esq. (BPR No. 017858)
T.O. Helton, Esq. (BPR No. 001929)
Philip M. Meyer, II, Esq. (BPR No. 029507)
Baker Donelson, et al.
633 Chestnut Street
Chattanooga, TN 37450-1800
423.209.4161 (t)
423.752.9578 (f)
hhoffecker@bakerdonelson.com
thelton@bakerdonelson.com
pmeyer@bakerdonelson.com

Attorneys for Defendants